UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

105 MT. KISCO ASSOCIATES LLC, AMANDA'S LANE LLC and MARK STAGG,

                           Plaintiffs,

              -against-

PAUL CAROZZA, RICHARD'S HOME CENTER & LUMBER, INC., RICHARD'S LUMBER & BUILDING MATERIALS CENTER, INC., CANRAD, INC. as successor to CANADIAN RADIUM & URANIUM CORP., VILLAGE OF MOUNT KISCO, MT. KISCO URBAN RENEWAL AGENCY, WESTCHESTER COUNTY DEPARTMENT OF HEALTH, UNITED STATES, TELEDYNE ENVIRONMENTAL, INC. as successor to ISOTOPES, INC., WESTWOOD NUCLEAR CORP., as successor to ISOTOPES, INC., THE NDL ORGANIZATION, INC. as successor to NUCLEAR DIAGNOSTICS LABORATORIES, INC., MERRITT ENVIRONMENTAL CONSULTING CORP., DOES 1 through 50, DOES 51 through 100,

                           Defendants.

Docket No. 7:15-cv-05346-NSR-JCM

ECF Case

-------------------------------------------------------------X

**DEFENDANT PAUL CAROZZA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

    Factual Background ........................................................................................................... 2

    NY Stone Is Created ......................................................................................................... 3

    Stagg Begins To Abuse His Interest In the Business ........................................................ 4

    Carozza Commences the Arbitration and Obtains a Preliminary Injunction ...................... 4

    Stagg Destroys the Business and Delays the Arbitration ................................................... 9

ARGUMENT ......................................................................................................................... 10

   I.    PLAINTIFFS' CERCLA CLAIMS, EQUITABLE ESTOPPEL CLAIM, AND
        CONTRIBUTION AND INDEMNIFICATION CLAIMS AGAINST CAROZZA
        SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO
        STATE A CLAIM .................................................................................................. 10

     A.   Plaintiffs' CERCLA Claims Fail to State a Claim Upon Which Relief May be
          Granted. ................................................................................................................ 11

     B.   Stagg and Amanda's Lane Lack Standing Under CERCLA. .................................... 14

     C.   Plaintiffs' Claims for Contribution and Indemnification Are Preempted by
          CERCLA. ............................................................................................................. 15

     D.   Plaintiffs' Claim for Equitable Estoppel Should Be Dismissed Because Such a Claim
          Is Not a Cause of Action and Cannot Form The Basis for the Recovery of Damages.
          15

     E.   Any CERCLA Claim Must Be Arbitrated. ............................................................. 16

  II.    PLAINTIFFS' STATE LAW CLAIMS AGAINST CAROZZA SHOULD BE
        DISMISSED PURSUANT TO RULE 12(B)(3) ON THE GROUNDS THAT THE
        COURT LACKS VENUE TO HEAR THE CLAIMS OR ALTERNATIVELY
        UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM BECAUSE
        PLAINTIFFS' CLAIMS ARE GOVERNED BY A BINDING ARBITRATION
        AGREEMENT ...................................................................................................... 17

     A.   Plaintiffs' State Law Claims Against Carozza Should Be Dismissed Pursuant to Rule
          12(b)(3) On the Grounds that the Court Lacks Venue to Hear the Claims, or
          Alternatively Under Rule 12(b)(6) for Failure to State a Claim Because Plaintiffs'
          Claims are Governed By a Binding Arbitration Agreement. .................................... 17

     B.   Plaintiff Amanda's Lane LLC Should Be Subject to the Binding Arbitration
          Agreement. ........................................................................................................... 19

 III.   PLAINTIFFS' STATE LAW CLAIMS DO NOT WARRANT THE COURT'S
        EXERCISE OF SUPPLEMENTAL JURISDICTION UNDER 28 U.S.C.A. § 1367 . 21

CONCLUSION ...................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achtman v. McInerney,*
150 Fed. Appx. 12 (2d Cir. 2005) ....................................................................21, 22

*Alamria v. Telcor Int'l,*
920 F. Supp. 658 (D.Md. 1996) ..............................................................................20

*In re Am. Express Fin. Advisors Secs. Litig.,*
672 F.3d 113 (2d Cir. 2011).....................................................................................17

*American Fuel Corp. v. Utah Energy Dev. Co.,*
122 F.3d 130 (2d Cir. 1997).....................................................................................20

*Arrigo v. Blue Fish Commodities,*
408 Fed. Appx. 480 (2d Cir. 2011) ........................................................................18

*Ashcroft v. Iqbal,*
566 U.S. 622, 129 S.Ct. 1937 (2009) ...............................................................10, 14

*Baylis v. Marriott Corp.,*
843 F.2d 658 (2d Cir. 1988)...............................................................................22, 23

*Bedford Affiliates v. Sills,*
156 F.3d 416 (2d Cir. 1998), *overruled on other grounds by*, *W.R. Grace &*
*Co.  v. Zotos Int'l, Inc.,* 559 F.3d 85, 90 (2d Cir. 2009) ........................................15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................................10, 11, 12, 14

*Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.,*
228 F.3d 275 (3d Cir. 2000)....................................................................................13

*Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Co.,*
354 F. Supp. 2d 499 (S.D.N.Y. 2005).....................................................................18

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 US 440 (2006).....................................................................................................18

*Calabrese v. McHugh,*
170 F Supp 2d 243 (D. Conn. 2001).......................................................................13

*Carson Harbor Vill., Ltd. V. County of L.A.,*
433 F.3d 1260 (9th Cir. 2006) .................................................................................13

*Cleveland v. Caplaw Enters.*,
    448 F.3d 518 (2d Cir. 2006)................................................................10

*Cole v. Pearson Educ., Inc.*,
    10 Civ. 7523 (JFK) (RLE), 2011 U.S. Dist. LEXIS 110603
    (S.D.N.Y. Sept. 28, 2011)................................................................18

*Crewe v. Rich Dad Educ., LLC*,
    884 F. Supp. 2d 60 (S.D.N.Y. 2012)...............................................18

*Disston Co. v. Sandvik, Inc.*,
    750 F. Supp. 745 (W.D. Va. 1990) ..................................................16

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)...............................................................11

*Freeman v. Complex Computing Co.*,
    119 F.3d 1044 (2d Cir. 1997)...........................................................20

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000).............................................................................18

*Gregory v. Daly*,
    243 F.3d 687 (2d Cir. 2001)..............................................................10

*Gussack Realty Co. v. Xerox Corp.*,
    224 F.3d 85 (2d Cir. 2000)................................................................13

*Hirschfeld Prods. v. Mirvish*,
    88 N.Y.2d 1054 (N.Y. 1996) ......................................................19, 20

*HRH Constr. LLC v. Metropolitan Transp. Auth.*,
    33 A.D.3d 568 (1st Dep't 2006) .......................................................21

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
    698 F.3d 58 (2d Cir. 2012)................................................................18

*Key Tronic Corp. v. United States*,
    511 U.S. 809, 114 S. Ct. 1960, 128 L. Ed. 2d 797 (1994).........13

*Kopelowitz & Co., Inc. v Mann*,
    83 A.D.3d 793 (2d Dep't 2011) ...................................................15, 16

*In re Laitasalo*,
    196 B.R. 913 (Bankr. S.D.N.Y. 1996).............................................21

*Leeds v. Meitz*,
    85 F.3d 51 (2d Cir. 1996)..................................................................12

*Milione v. City Univ. of N.Y.*,
   950 F. Supp. 2d 704 (S.D.N.Y. 2013), *aff'd*, 135 S. Ct. 964 (2015) ................................17, 18

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
   460 U.S. 1 (1983).........................................................................................................17, 18

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*,
   596 F.3d 112 (2d Cir. 2010)................................................................................................15

*Papasan v. Allain*,
   478 U.S. 265, 106 S.Ct. 2932 (1986).................................................................................12

*Sabilia v. Richmond*,
   11 Civ. 739 (JPO) (MHD), 2011 U.S. Dist. LEXIS 152228
   (S.D.N.Y. Oct. 26, 2011) ....................................................................................................16

*Semi-Tech Litig. LLC v. Bankers Trust Co.*,
   234 F. Supp. 2d 297 (S.D.N.Y. 2002).............................................................................21, 22

*Somin v. Total Cmty. Mgmt. Corp.*,
   494 F. Supp. 2d 153 (E.D.N.Y. 2007) ...............................................................................23

*Spencer-Franklin v. Citigroup/Citibank N.A.*,
   06 Civ. 3475 (GBD) (GWG), 2007 U.S. Dist. LEXIS 11625
   (S.D.N.Y. Feb. 21, 2007) ....................................................................................................17

*Syms v. Olin Corp.*,
   408 F3d 95 (2d Cir. 2005).............................................................................................12, 13

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995).................................................................................................19

*Trs. of Empire State Carpenters Annuity v. Syracuse Floor Sys.*,
   2014 U.S. Dist. LEXIS 180307 (E.D.N.Y. Dec. 5, 2014) ....................................................17

*Victorio v. Sammy's Fishbox Realty Co.*,
   LLC, 2015 U.S. Dist. LEXIS 61421 (S.D.N.Y. May 6, 2015).................................................17

*Wabtec Corp. v Faiveley Transp. Malmo AB*,
   525 F.3d 135 (2d Cir. 2008)................................................................................................17

*Wademan v. Concra*,
   13 F. Supp. 2d 295 (N.D.N.Y. 1998) ..................................................................................15

*Weathers v. Millbrook Cent. Sch. Dist.*,
   486 F. Supp. 2d 273 (S.D.N.Y. 2007).............................................................................22, 23

*York v. Ass'n of the Bar of New York*,
    286 F.3d 122 (2d Cir. 2002)....................................................................................11

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(3) ................................................... *passim*

Federal Rules of Civil Procedure Rule 12(b)(6) ................................................... *passim*

**Statutes**

28 U.S.C.A. § 1367................................................................................................21

28 U.S.C.A. § 1367(a) ..........................................................................................21

42 U.S.C.S. § 9607(a) ...........................................................................................13

57 N.Y. Jur. 2d § 5 2011).......................................................................................16

**Miscellaneous**

5 Wright & Miller, Federal Practice and Procedure §1216 (3rd ed. 2004) ...................................11

Defendant Paul Carozza ("Carozza" or "Defendant"), by and through his attorneys Thompson Hine LLP, respectfully submits this Memorandum of Law, together with the accompanying Declaration of Richard De Palma dated April 4, 2016 ("De Palma Decl."), all in support of his motion to dismiss the claims against Carozza asserted by Plaintiffs 105 Mt. Kisco Associates LLC ("105 Mt. Kisco"), Amanda's Lane LLC ("Amanda's Lane"), and Mark Stagg ("Stagg") (collectively, "Plaintiffs") in the First Amended Complaint (the "Complaint"). Carozza is entitled to dismissal of the First, Second, Third, Fourth, Ninth, Twelfth, and Thirteenth causes of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") on the grounds that such claims fail to state a claim upon which relief may be granted. Additionally, Carozza is entitled to dismissal of the Fifth, Sixth, Seventh, and Eighth causes of action under Rules 12(b)(3) and 12(b)(6) of the FRCP on the grounds that the Court lacks venue to hear such claims or in the alternative that the claims fail to state a claim upon which relief may be granted because they are governed by a binding arbitration agreement.

## PRELIMINARY STATEMENT

As set forth more fully below, the dispute between plaintiff Mark Stagg has an already long history which has been the subject of proceedings in the New York State Supreme Court, County of Westchester (Justice Scheinkman, Index No. 71267-2014 -- still pending, the "Supreme Court Action"), arbitration before the American Arbitration Association venued in New York (Arbitrator William Chandler, AAA Case No. 01-14-0002-2017 – still pending, the "Arbitration") and a mediation also through the AAA (Mediator Arthur Felsenfeld, the "Mediation") which resulted in a binding agreement to fully and finally resolve all disputes between Stagg and Carozza through a modified scope of review within the Arbitration.

Essentially, Carozza and Stagg agreed in the Mediation that all claims between the parties would be set aside and the entire dispute between the parties would be resolved completely by a

determination by the Arbitrator of the value of Carozza's 25% ownership interest in the business venture known as name "NY Stone" – the business owned by Carozza and Stagg and run through entities known as NY Stone & Landscape Supply LLC ("NYS LLC"), and plaintiff 105 Mt. Kisco Associates LLC ("105 LLC," and collectively with NYS LLC, "NY Stone" or the "Business").  Upon a determination of the value of Carozza's 25% ownership interest in the Business. Stagg would pay Carozza that value and buy out Carozza from the Business, effectively ending the relationship and the dispute.

However, once hearing dates were set in the Arbitration, Stagg filed this suit and sought a stay of the Arbitration on the grounds that the outcome of these proceedings may affect the valuation of the property owned by the Business which is an integral part of the valuation determination to be conducted in the Arbitration.  The Arbitrator stayed the Arbitration pending a dismissal or resolution of these proceedings.

Carozza now seeks dismissal of this action in order that the dispute with Stagg can proceed in the Arbitration and the Supreme Court Action to final resolution.

### STATEMENT OF FACTS

#### *Factual Background*

Prior to entering into the transactions by which Stagg and Carozza became co-owners of NY Stone, Carozza was a co-owner of a home center and building supply business operated on the same property known for many years known as "Richard's Lumber."  De Palma Decl. at Ex. C, ¶ 5.

Carozza has personally been in the building supplies industry for over 35 years, and has developed tremendous expertise and strong relationships with vendors, tradesmen, contractors, suppliers and others who regularly work in the construction and building industries.  *Id*. ¶ 16.

2

Starting during the residential housing construction crash in the 2000's and continuing into the financial crisis of 2009, Richard's Lumber suffered financially due to the economy and because of the downturn in the construction and homebuilding industries. *Id*. ¶ 18. Beginning in around 2010, Carozza began to look for either a buyer of Richard's Lumber or for a new business partner to continue operations at the property. *Id*. ¶ 20. Carozza closed Richard's retail business temporarily in approximately April 2012 and sought either a buyer or new partner for the business. *Id*. ¶ 21.

In or around summer 2012, Carozza was introduced to Stagg as a person in the construction industry who may be looking for an opportunity to invest in such a business. *Id*. ¶ 22.

### *NY Stone Is Created*

By the fall of 2012, Stagg and Carozza agreed to create a new Business (in the same business line) together at the site of the former Richard's Lumber under the name "NY Stone." There were and are two related aspects to the Business, the operating business (i.e., the assets used for the buying and selling building supplies and which generate the income of the Business) and the real estate (i.e., the property on which the Business is operated). *Id*. ¶ 26.

Based on discussions and negotiations, Stagg and Carozza would each contribute certain assets to the combined Business and became co-owners in the overall Business: 75% Stagg, 25% Carozza. *Id*. ¶ 28.

The property is comprised of two separate lots: Lot 4 (description) and Lot 5 (95 Kisco Avenue Tax Lot 69.65-2-5). *Id*. ¶ 29. Through a series of transactions, Stagg (using his alter ego company, plaintiff Amanda's Lane LLC "Amanda's Lane") purchased Lot 4 from Richard's Lumber. The closing of this transaction occurred on December 31, 2012. *Id*. ¶ 30.

In setting up the Business, Carozza contributed certain assets to the Business and Stagg (not Amanda's Lane) contributed Lot 4. Stagg, not Amanda's Lane, became an owner of 75% of the Business.  Amanda's Lane has no ownership interest in the Business whatsoever.  Stagg and Carozza operated the Business as co-owners (75% Stagg, 25% Carozza) starting from December 2012 to 2014 when the current dispute arose.  *Id*. ¶ 35.

### *Stagg Begins To Abuse His Interest In the Business*

Starting shortly after execution of the Operating Agreement in early 2014, Stagg began to act quite aggressively with respect to the operations and finances of the Business.  *Id*. ¶ 50.  He began to make decisions about purchases of assets without consulting Carozza as required by the Operating Agreement (*see* De Palma Decl. at Ex. D, § 15.5) and began using certain assets (trucks and employees) of the Business for his own private use and for his other businesses in violation of the Operating Agreement and his fiduciary duties.  *Id*. §§ 16, 17.4, 17.5 and 17.6.

Stagg then began to engage in conduct that was designed to attempt to exclude Carozza from the Business and obtain Carozza's ownership interest without compensation.  Stagg became more and more hostile and communications became less frequent and when they did occur, completely unproductive, consisting mostly of attempts to bully and intimidate.  De Palma Decl. at Ex.  C, ¶ 59.

Over the next few months, tensions rose, and in Early December, Stagg barred Carozza from the Business premises and attempted to terminate Carozza's employment with the Business as well as his ownership interests.  *Id*. ¶¶ 88-95.

### *Carozza Commences the Arbitration and Obtains a Preliminary Injunction*

On December 16, 2014, Carozza commenced the Arbitration with American Arbitration Association ("AAA"), Case No. 01-14-002-2017, pursuant to a mandatory arbitration clause

contained in the Operating Agreement dated January 8, 2014 (the "Operating Agreement") by and between Carozza and Stagg.  De Palma Decl. at Exs. B & D.

Pursuant to the Demand for Arbitration, Carozza brought claims in the Arbitration seeking (i) a declaration that Carozza is a 25% owner of the Business and (ii) seeking damages against Stagg based upon his breaches and violations of the Operating Agreement, and his breaches of fiduciary duty, duty of loyalty, corporate waste and mismanagement, self-dealing, conflict of interest, and unjust enrichment.  Carozza also sought a full accounting as to the Business and appropriate relief based upon the accounting.  De Palma Decl. at Ex. B.

Immediately upon filing the Arbitration, Carozza commenced proceedings in the New York State Supreme Court, County of Westchester, seeking a temporary restraining order and an injunction in aid of the arbitration.  De Palma Decl. at Ex. E.

On December 17, 2014, the Hon. Alan D. Scheinkman, Justice of the Supreme Court of the State of New York, County of Westchester (Index No. 71267-2014), granted (in part) Mr. Carozza's application for a TRO.  *Id.*

On February 4, 2015, Justice Scheinkman granted Mr. Carozza's motion for a preliminary injunction.   De Palma Decl. at Ex. F.

The Court has found that Mr. Carozza has shown a likelihood of success on the merits of his claims that he is a 25% owner of NY Stone and that Stagg has breached his obligations to Mr. Carozza.  Specifically, the Court held:

- "The Court begins by expressing the view that Carozza has shown prima facie that he was not just a mere … employee of NY Stone and has shown a likelihood of success on his claim that he has a membership interest in NY Stone."  Order at 12.

- "A review of the Operating Agreement and the Employment Agreement evidences that the two are inextricably interrelated."  *Id.*

- "The written agreements show that Carozza is likely to succeed on his claim that, despite the outward appearance that Carozza was only an employee of NY Stone, the economic reality was that Petitioner held a 25% membership interest in NY Stone." Order at 13.

- "There is much evidence supporting the conclusion that Carozza was a member, and not just an employee, of NY Stone."  Order at 13-14.

- "NY Stone's use of the term expulsion with regard to Petitioner in its November 20th letter is not a term that would be used with regard to the termination of a simply an employee. Further evidence is the co-dependence of the Operating Agreement and the Employment Agreement, the requirement that Carozza had to respond to capital calls of not only 105 but also NY Stone, the fact that Carozza was to have a capital account at NY Stone, and the fact that a failure to meet the capital calls of NY Stone allowed Petitioner to not only be expelled from 105 but also from his right to share in 25% of NY Stone's profits. Such evidence is all indicia of Carozza's membership interest in NY Stone. Further, NY Stone was very limited in its ability to terminate Petitioner's rights under the Employment Agreement."  Order at 14.

- "It is elementary that an employee does not typically have a capital account and it is even more unusual for an employee to have an affirmative obligation to put up more capital in response to a capital call or else face forfeiture of his existing capital account."  *Id*.

- "[Carozza] has established a likelihood of success concerning his membership interest in NY Stone."  *Id*.

- "[Carozza] has further established a likelihood of success on his claim that [Stagg] breached the Employment Agreement based on his locking Petitioner out of the business, his refusal to continue to pay Petitioner his salary, and his attempt to deprive Petitioner of his membership interests in 105 and NY Stone by terminating Petitioner as an employee and expelling him as a member."  *Id*.

- "While [Stagg] is correct that the Employment Agreement provided that [Carozza] was not permitted to take consecutive week vacations, Petitioner has provided evidence that Respondent agreed to allow him to take this particular consecutive two week vacation given the evidence that he was paid vacation time during this period." Order at 14-15.

- "With regard to [Carozza's] alleged default in failing to make the capital calls, Petitioner has provided evidence that the initial capital calls were procedurally invalid. Further even if they were procedurally valid, Petitioner has presented significant evidence that [Stagg] may be using the assets of NY Stone for the personal benefit, both in the form of the benefits to Bronx BE Builders [Stagg's private company] and the payment for multiple luxury personal vehicles which amount to nearly 10% of the NY Stone's monthly expenses. While Stagg perhaps (except for tax considerations) could take the cars as a personal benefit rather than a salary, it nevertheless remains that he seems to be the only one who is exempt from the cost-cutting at NY Stone. Moreover, there is significant evidence that he made the capital calls simply to manufacture a default by Petitioner and

6

wrest control of Petitioner's memberships interests in NY Stone and 105. In other words, there is strong evidence that, with Stagg having greater resources than Carozza, Stagg fixed a high capital call, recognizing that Carozza lacked the resources to meet it."  Order at 15 (emphasis added).

- "Because [Stagg] has not shown that the amount and timing of the capital calls were determined by a reasonable exercise of business judgment, has not made available (either with the capital call demands or upon this application) relevant records that would support the demands, because Petitioner does not have access to all of the financial records, and because Petitioner has made a significant showing that the capital call demands were pretextual so as to enable Stagg to get rid of Petitioner without having to buy him out, the Court finds that Petitioner has established prima facie, a likelihood of success on his claims."  *Id.*

*Id.*

Based upon the factual findings set forth in the Order, Judge Scheinkman issued an

injunction in aid of the arbitration:

ORDERED that Respondent Mark Stagg is, pending the confirmation of the award of the arbitrator to be made in the arbitration between the parties, hereby enjoined and restrained from:

(1)     selling, leasing, exchanging or disposing of any or all of the assets of 105 Mt. Kisco Associates LLC or of NY Stone & Landscape Supply LLC, except with the written consent of Petitioner Paul Carozza, which consent shall not be unreasonably withheld, or upon prior permission of the Court;

(2)     transferring any membership interests in 105 Mt. Kisco Associates LLC or of NY Stone & Landscape Supply LLC, or doing anything to interfere with any such interests held by Petitioner Paul Carozza, except with the written consent of Carozza, which consent shall not be unreasonably withheld, or upon prior permission of the Court;

(3)     doing anything to terminate Petitioner Paul Carozza as an employee of either or both 105 Mt. Kisco Associates LLC and/or NY Stone & Landscape Supply LLC, although Respondent Mark Stagg need not permit Petitioner Paul Carozza to work at the business locations of these entitles and Paul Carozza is required, if he has not already done so, to return the corporate truck and corporate credit card, except that he may use either or both in connection with his performance of any services on behalf of NY Stone & Landscape Supply LLC, which services are requested by Respondent Mark Stagg; and

(4) removing, destroying, altering or amending any of the corporate books and records of 105 and NY Stone; and it is further

ORDERED that, pending the confirmation of the award of the arbitrator to be made in the arbitration between the parties, Respondent Mark Stagg is enjoined and restrained from removing, destroying, altering or amending any of the corporate books and records of 105 Mt. Kisco Associates LLC and/or NY Stone & Landscape Supply LLC; and it is further

ORDERED that Respondent Mark Stagg, to the extent he has not already done so, shall make available for copying and inspection at reasonable times during the business hours of 105 Mt. Kisco Associates LLC and/or NY Stone & Landscape Supply LLC, all books, records, files, documents and financial records (including but not limited to any books, records, documents or statements in electronic form) relating to said entities in his possession, custody or control, provided, however that Petitioner Paul Carozza's is directed to comply with the provisions regarding confidentiality of records set forth in Sections 14 and 18 of the Operating Agreement for 105 Mt. Kisco Associates LLC, which provisions are specifically made applicable to the records of NY Stone & Landscape Supply LLC, but which shall not be deemed to preclude furnishing such records to attorneys and experts retained by said Petitioner to aid him in the arbitration.

*Id*.

Shortly after the injunction was issued, Carozza and Stagg engaged in the Mediation in an attempt to resolve the issues between them. Ultimately, they could not resolve the issues *at* the mediation, but did agree upon a procedure to modify the scope of the Arbitration to reach a final resolution of the disputes and to terminate the relationship between them. This agreement was reduced to a signed agreement dated March 18, 2015 (the "Mediation Agreement") which provided as follows:

2.      In lieu of a determination of the issues framed by the pleadings in the pending arbitration, the parties agree that the sole issue in the arbitration shall be a binding determination of the value of Carozza's 25% interest in NY Stone & Landscape Supply LLC ("NY Stone") and 105 Mt. Kisco Associates, LLC ("105 Mt. Kisco Associates"). A date of December 31, 2014 shall be used for purposes of the valuation. The arbitration shall determine the consideration to be paid by or to Carozza for the transfer of said 25% interest to Stagg.

* * *

9.      The consideration shall be paid within 45 days of the date of the Arbitrator's determination. Carozza shall effectuate the transfer of his 25% interest to Stagg at the time the consideration is paid.

De Palma Decl. at Ex. G.

Accordingly, the parties agreed in the Arbitration to an arbitrator who had the requisite skills and background to conduct the valuation determination agreed upon by the parties, Mr. William Chandler.

### Stagg Destroys the Business and Delays the Arbitration

As soon as the Mediation Agreement was executed and the Arbitration seemed to be proceeding to hearing, Stagg began to engage in a series of acts all designed to delay resolution of the dispute and thwart Carozza's ability to obtain satisfaction of his claims.

First, in violation of the Injunction, and constituting acts of contempt, Stagg ceased the operations of NY Stone, and sold all of its inventory on a cash basis fire sale without the consent of Carozza.  Stagg then rented the premises and began to do other acts all in violation of the Injunction.

In early May, 2015, Mr. Chandler and the parties set dates for the hearing of the dispute for June 30 and July 1, 2015.  De Palma Decl. at Ex. H.  During a conference call with the Arbitrator, Stagg raised for the first time issues about "contamination" at the property.  De Palma Decl. at Ex. I.  The hearing dates were postponed until September 22 and 23, 2016.  Stagg indicated in the Arbitration that he intended to amend his answering statement to add claims of fraudulent inducement of the Mediation Agreement (claims which he purports to raise in this action).  De Palma Decl. at Ex. J.

Shortly thereafter, Stagg filed the instant action and sought a stay of the Arbitration. Ultimately, the Arbitrator did stay these proceedings in a written interim order over objection from Carozza.  Although the Arbitrator did stay the proceedings because Stagg argued that the CERCLA claims could affect the valuation of the property, the Arbitrator did indicate that the scope and enforceability of the arbitration provision was to be determined by arbitration:

> This arbitration was commenced pursuant to the arbitration agreement contained in Section 27 of the 105 Mt. Kisco Associates LLC Operating Agreement which provides that "If any dispute arises among the members under or relating to this Agreement or relating to the LLC's business or internal affairs that the members cannot resolve voluntarily among themselves or by mediation under Section 26, then, unless the members decide otherwise by unanimous vote at the time, they shall resolve the dispute by arbitration by a single arbitrator under this Section 27." The arbitration is to be governed by the Commercial Arbitration Rules of the American Arbitration Association (Agreement §27.2(b)). Arbitral matters include "matters concerning the scope, construction and enforcement" of the arbitration provision and "material matters that arise under or relate to this Agreement or to the internal affairs of the LLC." In addition, §27.6 provides that "an arbitrator shall not amend or delete any provision of this Agreement but may add new provisions to it to the extent necessary to address matters not addressed in the Agreement."

*Id.* (footnote omitted).

Thus although all such issues are subject to arbitration, Stagg has attempted improperly to bring such claims in this proceeding. For the reasons stated below, the Amended Complaint should be dismissed in its entirety as against Carozza.

## ARGUMENT

I. **PLAINTIFFS' CERCLA CLAIMS, EQUITABLE ESTOPPEL CLAIM, AND CONTRIBUTION AND INDEMNIFICATION CLAIMS AGAINST CAROZZA SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM**

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted). For a claim to be facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"'The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" *Twombly*, 550 U.S. at 555 (quoting 5 Wright & Miller, Federal Practice and Procedure §1216, at 235-236 (3rd ed. 2004)).   In conducting its analysis, the Court may not accept mere "conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994).  Moreover, to be legally sufficient, the complaint must put forth at least one set of facts that "confer[s] a judicially cognizable right of action." *York v. Ass'n of the Bar of New York*, 286 F.3d 122, 125 (2d Cir. 2002).

### A.    Plaintiffs' CERCLA Claims Fail to State a Claim Upon Which Relief May be Granted.

Plaintiffs' CERCLA claims (*see* De Palma Decl. ¶ 3, Ex. A ¶¶ 202-247) require dismissal under Rule 12(b)(6) because they fail to state a claim upon which relief may be granted.

Most of the allegations by "plaintiffs" against Carozza concern his purported knowledge of prior acts of contamination or remediation by persons other than him (or his prior company Richard's Lumber).  These have nothing to do with any of the CERCLA claims alleged against Carozza.

The sole and completely <u>conclusory</u> allegations by plaintiffs relating to the CERCLA claims against Carozza are found at paragraphs 119 through 121 and 219 of the Complaint:

119.    During those thirty-two years of operations and ownership, Carozza oversaw the disposal, release and removal of radioactive soil and substances from 105 Kisco Avenue.

120. Defendants Carozza and Richard's Lumber's regular disturbance, release and disposal of radioactive soil further contaminated and damaged the Mt. Kisco Property.

121.    Defendant Carozza also arranged for the removal of contaminated soil from 105 Kisco Avenue, further dispersing and releasing radioactive materials throughout the Property as noted in the WCDH (1980), NYSDOH (1993), EPA (1994) and NYSDEC (1998) reports.

\* \* \*

11

219.    Defendant Carozza is a person who owned or operated the Mt. Kisco Property at the time of disposal or release of hazardous substances at the Mt. Kisco Property and benefitted from such processing, release or disposal.

*Id.* ¶¶ 119-121, 219.

These are basically the same rote statements made with respect to each of the other defendants (including the Doe Defendants) regardless of their connection to the site.  Plaintiffs' Complaint does not allege <u>facts</u> but is merely a formulaic recitation of the elements of a CERCLA claim in its attempt to assert such claim against Carozza.  Such conclusory allegations are insufficient.  *Twombly*, 550 U.S. at 553 n.3, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Leeds v. Meitz*, 85 F.3d 51, 53 (2d Cir. 1996) (bald assertions and conclusions of law will not suffice).  There is no explanation as to the manner in which Carozza allegedly engaged in any activities that could give rise to liability, and no basis or grounds upon which Carozza can presume he is alleged to have performed these actions, so as to properly form a defense.

Moreover, Plaintiffs' Complaint makes only a bald allegation that Plaintiffs have incurred response costs for "investigation, environmental sampling and analysis, and coordinating with EPA and state environmental authorities" in accordance with the National Contingency Plan ("NCP").  De Palma Decl. at Ex. A, ¶ 246.  There is no differentiation between the plaintiffs and it is impossible to determine whether each or any of them in fact incurred any expenses at all.  The only investigation discussed in the Complaint involves the personal business deal entered into with Carozza and the litigation/arbitration involving that matter.

The Second Circuit Court of Appeals has "stated that 'expenses incurred solely in preparation for litigation cannot be recovered as response costs unless they significantly

benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs.'" *Syms v. Olin Corp.*, 408 F.3d 95, 104 (2d Cir. 2005) (quoting *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 92 (2d Cir. 2000)) (per curiam). *See also Calabrese v. McHugh*, 170 F. Supp. 2d 243, 267 (D. Conn. 2001) (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 820, 114 S. Ct. 1960, 128 L. Ed. 2d 797 (1994)).   Even assuming the allegations in the Complaint are true, at best, the costs of "investigation" asserted here are a result of Plaintiffs' failure to conduct proper due diligence prior to purchasing an ownership interest in the Premises, not in conjunction with any planned removal or remediation efforts consistent with the NCP.

Rather, the exhibits to Plaintiffs' Complaint present ample support that other parties, including the EPA, NYSDOH, and WCDOH, have borne the cost of investigations and conducting surveys of the property.  Conspicuously absent from the multiple documents attached to the Complaint is a single environmental sampling and analysis conducted by or on behalf of the Plaintiffs.  At best, Plaintiffs' costs constitute a review of others' monitoring of the Premises, which is not recoverable under CERCLA.  *Black Horse Lane Assocs., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 297 (3d Cir. 2000) (finding that "neither [the party nor their consultant] played any role in the containment and cleanup of the Property").

The Complaint further fails to allege that any threat to human health or the environment existed prior to the actions alleged to have been taken by Plaintiffs, or any plan for any action that would be consistent with the NCP.   42 U.S.C.S. § 9607(a).

As such, Plaintiffs have not properly plead this threshold issue and therefore, the Complaint should be dismissed.  *Carson Harbor Vill., Ltd. v. Cnty. of L.A.*, 433 F.3d 1260 (9th Cir. 2006).

**B.      Stagg and Amanda's Lane Lack Standing Under CERCLA.**

Even if the Court were to find that 105 LLC has alleged sufficient facts to withstand a motion to dismiss, neither Stagg nor Amanda's Lane have any standing to pursue such claims. Thus, Stagg's and Amanda's Lane's "CERCLA" claims must be dismissed as matter of law.

It is undisputed that the 100% owner of the property at issue is currently 105 LLC. De Palma Decl. at Ex. A, ¶ 203.  Neither Stagg nor Amanda's Lane have any ownership interest in the property.  Although Stagg alleges that he purchased a portion of the property from Richard's Lumber through Amanda's Lane, he then contributed it to 105 LLC for his 75% ownership interest in 105 LLC.  De Palma Decl. at Ex. A, ¶¶ 141 and 154 ("Stagg purchased the radioactive Property").

No well pleaded allegations are contained in the Complaint regarding any CERCLA damages or fraud by Stagg or Amanda's Lane.  Nor are there any allegations that Stagg or Amanda's Lane may have any CERCLA damages in the future.  In the entire Complaint, which totals forty-seven pages and contains three-hundred fourteen numbered paragraphs, there is only a single reference made to Amanda's Lane and Stagg's involvement in paying for response costs. Paragraph 132 of the Complaint states, "[t]o date, Plaintiffs have expended tens of thousands of dollars researching and investigating the extent of the radiological contamination and expect to spend tens of thousands more to fully comprehend it and remedy."  De Palma Decl. ¶ 3, Ex. A, ¶ 132.  Such a barebones statement, which creates a connection to Amanda's Lane and Stagg solely by referring to "Plaintiffs" in the plural, hardly provides the factual content necessary to state a claim for relief.  *Iqblal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.  Moreover, Plaintiffs have not alleged any other facts from which the Court could draw a reasonable inference that either Amanda's Lane or Stagg have had or will continue to have any involvement in paying for the response costs.  Accordingly, neither Stagg nor Amanda's Lane have any

14

standing to make a CERCLA claim in these proceedings and all such claims must be dismissed as a matter of law.  _See, e.g._, *Wademan v. Concra*, 13 F. Supp. 2d 295, 302 (N.D.N.Y. 1998) (dismissing CERCLA claim for lack of standing and holding that "because the plaintiffs are not seeking to recover the costs associated with the cleanup of the site, they cannot recover damage under CERCLA.").

> **C.** **Plaintiffs' Claims for Contribution and Indemnification Are Preempted by CERCLA.**

Plaintiffs' claims for contribution and indemnification (*see* De Palma Decl. at Ex. A, ¶¶ 311-314) should be dismissed because they are preempted by CERCLA.

It is well settled law that CERCLA preempts the state law remedies of restitution and indemnification.  *See Bedford Affiliates v. Sills*, 156 F.3d 416, 427 (2d Cir. 1998) (holding that "CERCLA preempts the state law remedies of restitution and indemnification."), *overruled on other grounds by*, *W.R. Grace & Co.  v. Zotos Int'l, Inc.*, 559 F.3d 85, 90 (2d Cir. 2009); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d Cir. 2010) (holding that "state law contribution claims for CERCLA response costs conflict with CERCLA contribution claims and therefore are preempted" and "reiterate[ing]" its conclusion "that state law indemnification claims were preempted by CERCLA") (citing *Bedford Affiliates*, 156 F.3d at 427).

> **D.** **Plaintiffs' Claim for Equitable Estoppel Should Be Dismissed Because Such a Claim Is Not a Cause of Action and Cannot Form the Basis for the Recovery of Damages.**

Plaintiffs' ninth cause of action, which seeks damages based on the doctrine of equitable estoppel (*see* De Palma Decl. ¶ 3, Ex. A, ¶¶ 284-294) should be dismissed because equitable estoppel is not a cause of action and cannot form the basis for the recovery of compensatory damages.  *See Kopelowitz & Co., Inc. v Mann*, 83 A.D.3d 793, 798, 921 N.Y.S.2d 108, 113 (2d

Dep't 2011) (affirming the trial court's dismissal of plaintiff's claim for damages based on equitable estoppel and holding that "equitable estoppel is not a basis to recover damages."); *Sabilia v. Richmond*, 11 Civ. 739 (JPO) (MHD), 2011 U.S. Dist. LEXIS 152228, at *92 (S.D.N.Y. Oct. 26, 2011) (holding that "Plaintiffs' equitable-estoppel claim fails because they seek only money damages as a remedy [], which is not available as relief under equitable-estoppel principles").  *See also id.* (noting that "'Equitable estoppel is not a cause of action or a defense; it is, rather, an equitable bar to the assertion of a defense or claim . . . [that] is invoked to prohibit a party from engaging in certain conduct and cannot be used as the basis to recover money damages.'") (citing 57 N.Y. Jur. 2d § 5 (2011)).

     **E.**     **Any CERCLA Claim Must Be Arbitrated.**

Although it is respectfully submitted that all of Plaintiffs' CERCLA claims should be dismissed, if the Court were to determine that any plaintiff does state a CERCLA claim, such claim should nonetheless be dismissed because of the mandatory arbitration clause contained in the Operating Agreement for the reasons set forth in Section II below.  *See, e.g.*, *Disston Co. v. Sandvik, Inc.*, 750 F. Supp. 745, 749 (W.D. Va. 1990) (granting motion to dismiss and/or compel arbitration of CERCLA claim where agreement contained "a very broad arbitration clause" and where court found there to be "no evidence that Congress disfavors arbitration of a CERCLA, and some evidence that both Congress and the EPA approve of arbitration.")

## II.     PLAINTIFFS' STATE LAW CLAIMS AGAINST CAROZZA SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(3) ON THE GROUNDS THAT THE COURT LACKS VENUE TO HEAR THE CLAIMS OR ALTERNATIVELY UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM BECAUSE PLAINTIFFS' CLAIMS ARE GOVERNED BY A BINDING ARBITRATION AGREEMENT

### A.     Plaintiffs' State Law Claims Against Carozza Should Be Dismissed Pursuant to Rule 12(b)(3) On the Grounds that the Court Lacks Venue to Hear the Claims, or Alternatively Under Rule 12(b)(6) for Failure to State a Claim Because Plaintiffs' Claims are Governed By a Binding Arbitration Agreement.

Plaintiffs' state law claims for rescission of the Operating Agreement based upon fraudulent inducement (*see* De Palma Decl. ¶ 3, Ex. A, ¶¶ 248-254), damages based upon fraudulent inducement (*see id.* ¶¶ 255-265), unjust enrichment (*see id.* ¶¶ 266-274), and money had and received (*see id.* ¶¶ 275-283) (collectively the "State Law Claims") should be dismissed pursuant to Rule 12(b)(3) on the grounds that the Court lacks venue to hear the action because the aforementioned claims are governed by a binding arbitration agreement.[1]

Federal courts recognize a strong policy in favor of arbitration, and "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14 Civ. 8678 (CM), 2015 U.S. Dist. LEXIS 61421, at *45-46 (S.D.N.Y. May 6, 2015) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-25 (1983)).   Moreover, the Second Circuit has established a two-part test for determining arbitrability:  first, there must be a valid agreement between the parties to arbitrate; second, the dispute at issue must fall within in the scope of the arbitration clause.  *In re Am.*

---

[1] For purposes of clarity, Defendant Carozza respectfully submits that he is seeking dismissal only and does not seek a stay of the proceedings.  *See generally, Spencer-Franklin v. Citigroup/Citibank N.A.*, 06 Civ. 3475 (GBD) (GWG), 2007 U.S. Dist. LEXIS 11625, at *11-12 (S.D.N.Y. Feb. 21, 2007) (noting that "where defendants have sought dismissal rather than a stay, courts in this district have granted dismissal."); *Wabtec Corp. v. Faiveley Transp. Malmo AB*, 525 F.3d 135, 140 (2d Cir. 2008) (finding conversion of motion to dismiss to motion to compel inappropriate where movant did not explicitly or implicitly "petition the district court to compel arbitration," but rather sought to "prevent[] [the plaintiff] from resolving any dispute in the courts.")

*Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (setting forth two-part test); *Trs. of Empire State Carpenters Annuity v. Syracuse Floor Sys.*, CV 13-1509 (SJF)(ARL), 2014 U.S. Dist. LEXIS 180307, at *8-9 (E.D.N.Y. Dec. 5, 2014).   Here, both prongs of this test are satisfied.

The first prong of the test is satisfied because Section 27.1 of the Operating Agreement provides that "[i]f any dispute arises among the members under or relating to this Agreement or relating to the LLC's business or internal affairs that the members cannot resolve voluntarily among themselves or by mediation . . . they shall resolve the dispute by arbitration . . . ."[2]   De Palma Decl. ¶ 6, Ex. D.   The second prong of the test is satisfied because the arbitration provision at issue here is broad and undoubtedly applies to each of Plaintiffs' State Law Claims (as well as any surviving CERCLA claims, *see* Section I.E. *infra*).[3]   Accordingly, the arbitration agreement deprives this Court of venue over this dispute.   *See generally Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Co.*, 354 F. Supp. 2d 499, 503 (S.D.N.Y. 2005) ("[w]here the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'") (internal citations omitted).[4]

---

[2] Pursuant to Section 27.10 of the Operating Agreement, "matters relating to the enforceability of this Section 27 and to any award granted under this Section shall be governed by the Federal Arbitration Act."  De Palma Decl. ¶ 6, Ex. D.

[3] With regard to Plaintiffs' claim that the Operating Agreement should be rescinded based upon fraudulent inducement (De Palma Decl. ¶ 3, Ex. A, ¶¶ 251-254), it is well settled that with regard to challenges to the contract as a whole, the FAA "'does not permit the federal court to consider claims of fraud in the inducement of the contract generally.  Rather, such claims must be decided by the arbitrator.'"  *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)); *see also Arrigo v. Blue Fish Commodities*, 408 Fed. Appx. 480, 482 (2d Cir. 2011) ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.") (internal quotations and citations omitted).

[4] Even if this Court were to consider there to be any doubt regarding the scope of the arbitration agreement, such doubts must be "resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24-25; *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.").

Similarly, the fact that the claims in this case are subject to a legally binding arbitration agreement precludes the Court from granting the relief that Plaintiffs seek with respect to the State Law Claims and warrants dismissal under Rule 12(b)(6).  *See Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 73 (S.D.N.Y. 2012) (granting motion to dismiss in light of a binding arbitration provision governing the dispute)*; Cole v. Pearson Educ., Inc.*, 10 Civ. 7523 (JFK) (RLE), 2011 U.S. Dist. LEXIS 110603, at *17 (S.D.N.Y. Sept. 28, 2011) (holding same).

Finally, to the extent that Plaintiffs maintain there are any issues that require adjudication by a court (it is respectfully submitted that there are none), such issues should be disposed of in the ongoing state court proceeding, where the court there has already dealt with issues relating to arbitration under the Operating Agreement.

In the Supreme Court Action, Justice Scheinkman has already been asked to determine the applicability of the arbitration clause to the dispute between the parties and issued both a TRO and a preliminary injunction.  Indeed, Stagg made an application to stay the Arbitration based on allegations that Carozza failed to fulfill his obligations under the arbitration clause with respect to mandatory mediation (that motion was resolved between the parties by the conduct of the mediator).  De Palma Decl. at Ex.  J.  Justice Scheinkman is fully familiar with the parties and the facts and circumstances of the dispute, and has retained jurisdiction over the matter.

Accordingly, given that these are state law claims, and given the Supreme Court's familiarity and active jurisdiction over the matter, if there were any issues to be determined by a court (as opposed to an arbitrator), this Court should dismiss them in favor of proceedings in the Supreme Court Action.

### B.    Plaintiff Amanda's Lane LLC Should Be Subject to the Binding Arbitration Agreement.

Although Plaintiff Amanda's Lane is not a signatory to the arbitration agreement, it

19

should nevertheless be bound by such agreement either as the agent of Plaintiff Mark Stagg, as the alter ego of Stagg, or as the result of estoppel.

With regard to agency, "[t]raditional principles of agency law may bind a non-signatory to an arbitration agreement." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995). *See, e.g.*, *Hirschfeld Prods. v. Mirvish*, 88 N.Y.2d 1054, 1056, 651 N.Y.S.2d 5, 6 (1996) (finding that even though defendants were not personally signatories to the agreement, and thus to the arbitration agreement, they were afforded "the benefit of the arbitration agreements entered into by their principals to the extent that the alleged misconduct . . . [is] in their capacities as agents of the corporation."); *Alamria v. Telcor Int'l*, 920 F. Supp. 658, 674 (D.Md. 1996) (compelling arbitration against non-signatory company Oncor where "[a]s an officer of Oncor, Switzer may have bound Oncor to the Alamria/Telcor Contract even though he signed the Contract as an officer of Telcor . . . even absent [Oncor's] intention to be bound"). Amanda's Lane does not actually allege any damages in the Complaint. It is not the owner of the property. The only specific allegation is that "Stagg, acting through his wholly owned LLC, plaintiff Amanda's Lane, agreed to purchase 105 Kisco Avenue . . . ." De Palma Decl. at Ex. A, ¶ 141. Thus, at best, this sole allegation establishes that Amanda's Lane acted only as agent for Stagg.

Amanda's Lane should also be bound to the arbitration agreement because it is an alter ego of Stagg. Typically, the alter ego theory is used to bring a claim against a corporation and therefore, the Second Circuit has recognized that "piercing the corporate veil between a signatory and nonsignatory party may bind the nonsignatory party to an arbitration agreement of its alter ego." *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 133 (2d Cir. 1997). A non-signatory will be deemed the alter ego of a signatory of an arbitration clause when: (1) the non-

signatory exercises complete domination over the signatory; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff.  *See Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052 (2d Cir. 1997) (citing factors).  However, this standard should not only apply in the context of defensive use of the theory to hold a corporation to be bound by an arbitration clause.  Stagg has alleged that he used his "wholly owned LLC" to engage in a personal transaction that resulted in Stagg (not Amanda's Lane) owning 75% of the Business.  Here, there can be no question that no true separate existence exists between Stagg and Amanda's Lane, such that Amanda's Lane is bound by the arbitration clause to the same extent that Stagg is.

Finally, for the same reasons, Amanda's Lane should be estopped from avoiding the obligation to arbitrate pursuant to the arbitration agreement.  "A nonsignatory to an agreement containing an arbitration clause that has knowingly received direct benefits under the agreement will be equitably estopped from avoiding the agreement's obligation to arbitrate."  *HRH Constr. LLC  v. Metro. Transp. Auth.*, 33 A.D.3d 568, 569, 823 N.Y.S.2d 140, 141 (1st Dep't 2006); *see also In re Laitasalo*, 196 B.R. 913, 924 (Bankr. S.D.N.Y. 1996) ("a non-signatory can be compelled to arbitrate a dispute where the contract had an arbitration provision, the non-signatory had knowledge of the contract, benefitted from the contract and did not object to the terms of the contract.") (citing *Thomson-CSF*, 74 F.3d at 778).

## III.   PLAINTIFFS' STATE LAW CLAIMS DO NOT WARRANT THE COURT'S EXERCISE OF SUPPLEMENTAL JURISDICTION UNDER 28 U.S.C.A. § 1367

Even if the arbitration agreement did not govern the State Law Claims, which is not the case here, the claims themselves would still require dismissal because they do not warrant the Court's exercise of supplemental jurisdiction over them under 28 U.S.C.A. § 1367.  Pursuant to 28 U.S.C.A. § 1367(a), "district courts shall have supplemental jurisdiction over all other claims

that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  "A court thus has the power to exercise supplemental jurisdiction over state claims if they derive from 'a . . . nucleus of operative fact' common to the jurisdiction-conferring claim and if they 'are such that [the claimant] would ordinarily be expected to try them all in one judicial proceeding. . . .'" *Semi-Tech Litig. LLC v. Bankers Trust Co.*, 234 F. Supp. 2d 297, 299-300 (S.D.N.Y. 2002) (internal citations omitted); *see also Achtman v. McInerney*, 150 Fed. Appx. 12, 14 (2d Cir. 2005) (noting that in order to exercise supplemental jurisdiction, "th[e] federal claim and the state claim over which supplemental jurisdiction is exercised must stem from the same common nucleus of fact" and that "[t]o qualify, claims must do more than simply bear some factual relationship to each other.") (internal citations omitted).  Here, it is beyond doubt that there is no common nucleus of fact between Plaintiffs' CERCLA claims, which pertain to the property, and the State Law Claims, which pertain to dealings between Carozza and Plaintiffs.  *See Semi-Tech Litig. LLC*, 234 F. Supp. 2d at 301 (declining to exercise supplemental jurisdiction where "[t]he factual and legal questions unique to the common law claims against the moving defendants simply overwhelm any questions common to the TIA claims against BT.")

Importantly, since Stagg and Amanda's Lane do not have standing to assert any CERCLA claims, they do not even possess a federal claim to support supplemental jurisdiction of any state law claim.  "When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims."  *Baylis v. Marriott Corp.*, 843 F.2d 658, 664-65 (2d Cir. 1988) (noting that "[t]he basis for retaining jurisdiction is weak when . . . the federal claims are dismissed before trial.").  Moreover, when "evaluating how to exercise its discretion with respect to retaining jurisdiction

over pendant state law claims, the court looks to considerations of judicial economy, convenience and fairness to litigants." *Weathers v. Millbrook Cent. Sch. Dist.*, 486 F. Supp. 2d 273, 276 (S.D.N.Y. 2007) (internal citations and quotations omitted). Here, it is clear that considerations of judicial economy, convenience and fairness to the litigants require that the State Law Claims be adjudicated in the ongoing state court proceeding, where the presiding judge is fully familiar with the parties and the facts and circumstances of the dispute. *See Baylis*, 843 F.2d at 665 (holding that "[a]t this early stage in the proceedings judicial economy, convenience and fairness do not demand that the federal courts hear this pendent claim."). *See also Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) ("Where, as here, the court has dismissed before trial the only basis for Federal jurisdiction, the court should decline to exercise jurisdiction over the pendent state claims."); *Weathers*, 486 F. Supp. 2d at 276 ("Having dismissed those claims that formed the basis for our original jurisdiction, we decline to exercise supplemental jurisdiction over plaintiffs' medical malpractice claims against the doctor defendants."); *Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 713-14 (S.D.N.Y. 2013) ("The dismissal of Plaintiff's federal claims deprives this Court of supplementary jurisdiction over Plaintiff's remaining state and local law claims."), *aff'd*, 135 S. Ct. 964 (2015). Thus, the Court should, at the very least, dismiss any state claims by Stagg and Amanda's Lane.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant Paul Carozza respectfully requests that the Court dismiss the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Twelfth, and Thirteenth causes of action against Carozza pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), and grant such other and further relief as the Court deems just and proper.

Dated: April 4, 2016  
      New York, New York

                       **THOMPSON HINE LLP**

                  By:   s/Richard De Palma

                       Richard De Palma  
                       David Charme  
                       335 Madison Avenue – 12th Floor  
                       New York, New York 10017  
                       (212) 344-5680

                       Attorneys for Defendant  
                       *Paul Carozza*

## CERTIFICATE OF SERVICE

I certify that on this date I caused a true and correct copy of the foregoing to be served by

emailing a true copy of the same upon the following:

Thomas E. Stagg, Esq.
Andrew Kazin, Esq.
Stagg, Terenzi, Confusione & Wabnik,
LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
tstagg@stcwlaw.com
akazin@stcwlaw.com

 *Attorneys for Plaintiffs*

Whitney W. Singleton, Esq.
120 Main Street
Mt. Kisco, New York 10549
wsingleton@sdslawny.com

*Attorneys for Defendant*
*Village of Mount Kisco*

Peter M. Aronoff, Esq.
United States Attorney's Office for SDNY
86 Chambers Street
New York, New York 10007
peter.aronoff@usdoj.gov

*Attorneys for Defendant*
*United States*

Philip Goldstein, Esq.
McGuire Woods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105
pgoldstein@mcguirewoods.com

*Attorneys for Defendant*
*Teledyne Environmental, Inc. as successor*
*to Isotopes, Inc.*

Ashley Hall
Sinnreich, Kosakoff & Messina
267 Carleton Avenue
Central Islip, NY 11722
ahall@stcwlaw.com

*Attorneys for Plaintiffs*

James J. Wenzel, Esq.
Melissa-Jean Rotini, Esq.
Westchester County Attorney's Office
148 Martine Avenue, Room 600
White Plains, New York 10601
James.J.Wenzel@gmail.com
mjr1@westchestergov.com

*Attorneys for Defendant*
*Westchester County Department of Health*

Erica M. Zilioli, Esq.
U.S. Department of Justice,
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
erica.zilioli@usdoj.gov

*Attorneys for Defendant*
*United States*

Paul K. Stockman, Esq.
McGuire Woods LLP
625 Liberty Avenue
Pittsburgh, PA 15222
pstockman@mcguirewoods.com

*Attorneys for Defendant*
*Teledyne Environmental, Inc. as successor*
*to Isotopes, Inc.*

25

Kevin M. Young, Esq.  
Young Sommer LLC  
5 Palisades Drive  
Albany, New York 12205  
kyoung@youngsommer.com  

*Attorneys for  Defendants*  
*Village of Mount Kisco and*  
*Mt. Kisco Urban Renewal Agency*  

Peter B. Skelos, Esq.  
Forchelli, Curto, Deegan, Schwartz, Mineo,  
Cohn & Terrana LLP  
333 Earle Ovington Boulevard, Suite 1010  
Uniondale, New York 11553  
pskelos@forchellilaw.com  

*Attorneys for Defendant*  
*Merritt Environmental Consulting Corp.*

I certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements made by me are willfully false, I am subject to punishment.

s/Dwayne Lunde
_____
Dwayne Lunde

Dated: April 4, 2016